NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0325n.06

Case No. 20-3720

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 12, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| OHIO MIDLAND, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| KDC INVESTMENTS, LLC, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellee, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| v. | ) | |
| | ) | |
| GORDON PROCTOR, Director, | ) | **O P I N I O N** |
| Defendant, | ) | |
| | ) | |
| NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, | ) | |
| Defendant-Appellant. | ) | |

BEFORE: GILMAN, McKEAGUE, and BUSH, Circuit Judges.

**McKEAGUE, Circuit Judge.** The U.S. Coast Guard tasked the owner of the Bellaire Bridge with preparing a plan for its demolition in 1998. Since then, despite administrative fines, several transfers of ownership, nearly sixteen years of civil litigation, and one finding of criminal contempt, the bridge still stands. In an attempt to end this saga, the district court appointed a master to help the parties towards a resolution. When the parties were unable to come to a resolution, the district court issued an amended order to Plaintiff-Appellee KDC Investments, LLC, to demolish the bridge and split the master's fees between the remaining parties. Defendant-Appellant Norfolk Southern appeals the district court's order that it be required to pay $8,420 in

fees, arguing that the master's appointment was invalid and that the allocation of fees was improper. Although we hold that Norfolk Southern waived its objection to the master's appointment, we agree that the district court did not properly consider the factors required by Federal Rule of Civil Procedure 53 when allocating the master's fees between the parties. We therefore **REMAND** for further consideration consistent with this opinion.

## I.

This case, now in its sixteenth year, concerns the Bellaire Bridge ("the Bridge"), which crosses the Ohio River between Bellaire, Ohio and Benwood, West Virginia. This case was last before this Court in 2008, and what follows is a brief summary of the complex factual and procedural background explained fully in our prior opinion.

Congress authorized the Interstate Bridge Company to construct, maintain, and operate a toll bridge at this location on September 12, 1922. *See* H.B. 11901. The Interstate Bridge Company leased land for one of the Bridge's piers from the Pennsylvania Railroad Company. (Defendant-Appellant Norfolk Southern Railway Company ("Norfolk Southern") is a successor of Pennsylvania Railroad Company). The Bridge operated as a toll bridge until 1991, when the Ohio Department of Transportation purchased the bridge ramp on the Ohio side of the river from the Interstate Bridge Company in order to construct Ohio Route 7, subsequently demolishing the ramp and leaving the bridge unusable. Interstate Bridge Company then sold its interest in the bridge to former plaintiff Roger Barack in March 1991. Roger Barack in turn assigned some portion of his interest in the Bridge to Plaintiff Ohio Midland, Inc. In November 1998, the U.S. Coast Guard ordered Mr. Barack to come up with a demolition plan. When Mr. Barack did not comply, the U.S. Coast Guard issued a 2001 order to remove the bridge and, when he did still did not comply by 2005, assessed him $300,000 plus interest and costs. In 2005, Ohio Midland, Inc. and Mr.

Barack launched this § 1983 suit against a variety of defendants seeking, among other claims, to adjudicate responsibility for the bridge.

The suit reached this Court in 2008, when we upheld the district court's denial of leave to the then-Plaintiffs to amend their complaint and affirmed the district court's grant of summary judgment on a subset of issues to Norfolk Southern. Plaintiffs attempted to appeal this result to the Supreme Court, which denied a writ of certiorari on April 20, 2009, Southern had, prior to the appeal, filed a Motion for Relief Pursuant to Federal Rule of Civil Procedure 70, seeking, among other sanctions, an order for Mr. Barack to demolish the bridge and to hold Mr. Barack in contempt of court. In July 2009, Norfolk Southern and Mr. Barack agreed to a timeline for the bridge to be removed by July 21, 2011, later extended to December 21, 2011.

In 2011, following a series of transfers of ownership from Mr. Barack, Plaintiff-Appellee KDC Investments, LLC ("KDC") filed a motion to intervene or be substituted as a party. The district court granted this motion, and subsequently extended the demolition deadline until November 30, 2012.

KDC was unable to post an appropriate bond to Defendant City of Benwood for the demolition of the bridge, further delaying demolition. On February 26, 2013, the district court held KDC in contempt for failing to take the steps to apply for a bond and ordered fines and additional status reports.

Despite the contempt order, KDC made little progress on obtaining a bond. Defendant City of Benwood moved to intervene as a party and the district court granted the motion. On September 13, 2013, the district court issued a show-cause order against KDC owner Lee Chaklos to determine if he should be held in criminal contempt; following hearings, the district court found Mr. Chaklos in contempt and sentenced him to 30 days imprisonment and a $2,500 fine. Op. and

Order at 18, *United States v. Chaklos*, No. 2:13-cr-206 (N.D. Ohio Oct. 28, 2014), ECF No. 31; J. at 2-3, *Chaklos*, No. 2:13-cr-206, ECF No. 43. Counsel for KDC withdrew in March 2014.

In 2017, having seen no progress towards removing the Bridge, the district court enlisted Mr. David Kopech to work as a master[1] to "promote resolution and removal of the bridge." Mr. Kopech reviewed the history of the case as well as potential funding sources and possible plans for demolition. The district court held five status conferences running from February 22, 2018 through February 19, 2019. The transcript of the first status conference, the only one on record, indicates that both Mr. Kopech and counsel for Norfolk Southern participated. Orders following other status conferences reference Mr. Kopech as a participant; none indicate any objection by any party to his involvement. The district court issued a final order on February 21, 2019, directing the parties to reach a resolution by March 31, 2019. The parties failed to do so and no action was taken in the case for over a year.

On June 23, 2020, the district court issued the challenged Opinion and Order. The district court noted that the case had been "in the dismissal phase since 2007," and that it "has done all it can do to resolve this matter." The Opinion and Order again ordered KDC to demolish the Bridge, approved of Mr. Kopech's fees, and ordered that Mr. Kopech's fees be split evenly—$8,420 each—between Plaintiff KDC, Defendant-Appellant Norfolk Southern, and Defendant City of Benwood. Norfolk Southern then filed this appeal challenging the district court's order that it pay $8,420.

---

[1] In its Opinion and Order, the district court refers to Mr. Kopech as a "Special Master" appointed under Federal Rule of Civil Procedure 53. Rule 53 refers primarily to "masters." The distinction between the term 'special master' and the term master as used in the current Rule 53—*see* Fed. R. Civ. P. 53(a) advisory committee's note to 1983 amendment; Fed R. Civ. P. 53 advisory committee's note to 2003 amendment—is not relevant here. We will refer to Mr. Kopech as a "master."

**II.**

Norfolk Southern challenges the district court's opinion and order on two grounds: one, that Mr. Kopech's appointment as master was invalid due to various procedural defects; and two, that in the alternative, the district court failed to consider properly the requisite factors when allocating Mr. Kopech's fees between the parties. We consider these arguments in turn, holding that Norfolk Southern has waived its objection to Mr. Kopech's appointment but agreeing that the district court did not adequately set forth the basis for its decision.

**A.**

Because Norfolk Southern objects to Mr. Kopech's appointment as master for the first time on appeal, it has waived its objection.

"[I]ssues not presented to the district court but raised for the first time on appeal are not properly before this court." *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1993). An objection to the appointment of a master under Federal Rule of Civil Procedure 53 is waived if not brought promptly following appointment or referral. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1213 (6th Cir. 1981) (noting that a party must object to a reference to a magistrate serving as a master under Rule 53 "either at the time of reference or soon after"); *McGowan v. Avco Corp.*, 817 F.2d 105, No. 86-5362, 1987 WL 37217, at *1 (6th Cir. 1987) (per curiam) (denying appellants' objections to appointment of master under Fed. R. Civ. P. 53 where appellant waited sixteen months after appointment to raise the issue with the district court); 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 2606 (3d ed.) (failure to "contest the propriety of a reference to a master under Federal Rule 53 . . . is tantamount to acquiescence and the reference cannot be challenged later on appeal by a party who neither has objected to a reference nor moved to have it revoked").

Norfolk Southern argues that it lacked sufficient notice because there was no formal order appointing Mr. Kopech. The record indicates, however, that Norfolk Southern was on notice of Mr. Kopech's involvement in the case and was corresponding with Mr. Kopech more than two years before the challenged Opinion and Order was issued. The district court first contacted Mr. Kopech in April of 2017, and Norfolk Southern was aware of Mr. Kopech's involvement in the case from at least a February 22, 2018 Status Conference at which Mr. Kopech was identified as a court-appointed receiver. By a May 14, 2018 order, Mr. Kopech was identified as a "Special Master." Mr. Kopech's time records reference several instances of direct communication with Norfolk Southern's counsel in this matter beginning on April 10, 2018 and correspondence with the full group of participants, including Norfolk Southern, through February 2019. At no time prior to this appeal did Norfolk Southern raise any objection to Mr. Kopech's appointment or involvement. Norfolk Southern had ample time to raise any of its objections with the district court and, by failing to do so, acquiesced to Mr. Kopech's appointment as master.

Because Norfolk Southern failed to object to Mr. Kopech's appointment as master to the district court, it has waived its opportunity to object to Mr. Kopech's appointment as master here.

**B.**

On the other hand, we agree with Norfolk Southern that the district court did not properly consider specific factors before allocating Mr. Kopech's fees among the parties, or at least did not provide sufficient explanation.

Federal Rule of Civil Procedure 53(g)(3) requires an appointing court to "allocate payment among the parties after considering [1] the nature and amount of the controversy, [2] the parties' means, and [3] the extent to which any party is more responsible than other parties for the reference to a master." District court decisions regarding the allocation of payment for the master between

the parties are reviewed under the abuse-of-discretion standard. *Hart v. Cmty. School Bd.*, 383 F. Supp. 699, 767 (E.D.N.Y. 1974) (citing *Newton v. Consolidated Gas Co.*, 259 U.S. 101, 105 (1922)), *aff'd on other grounds*, 512 F.2d 37 (2d Cir. 1975).

Although the district court assessed the reasonableness of Mr. Kopech's fee as master, it did not include any explanation for its decision to allocate the fee equally to all parties. Because we cannot say that the district court considered the required factors when assessing Norfolk Southern its $8,420 share of the fee, we have no choice but to remand.

### III.

Norfolk Southern failed to object to the appointment of a master prior to bringing this appeal and therefore has waived its arguments that the appointment was invalid. But because, the district court did not explain its consideration of the factors required by Rule 53 when allocating a master's fees between parties, we **REMAND** for further consideration consistent with this opinion.